IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| CANAL INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | Civil Action Number 3:07CV339 |
| JAMES M. BARKER, III, d/ba/ Barker & Son, et. al | |
| Defendants. | |

### **MEMORANDUM OPINION**

THIS MATTER comes before the Court on Plaintiff Canal Insurance Company's ("Canal"); and Defendant James M. Barker III, d/b/a/ Barker & Son, ("Barker"), Defendant Denise Penn ("Penn") and Defendant Houstonia Clymer ("Clymer") (collectively, the "Defendants") cross Motions for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons expressed below, Canal's Motion for Judgment on the Pleadings is GRANTED.

### **I. BACKGROUND**

On August 2, 2005, Defendant Justin Colvard ("Colvard") was driving a tractor-trailer owned by Barker when he was involved in a motor vehicle accident on southbound Interstate 85 in Brunswick County, Virginia. Colvard had made a delivery to a location in Petersburg, Virginia and was expected to pick up property in Salisbury, North Carolina to transport to Elberton, Georgia on August 3, 2005. Thus, at the time of the accident, Colvard was "deadheading," meaning that the trailer was empty. Penn and Clymer allege that Colvard was the cause of the accident and, therefore,

1

Colvard and Barker, as Colvard's employer, are responsible for the injuries they incurred in the accident.[1]

Canal brought the instant action seeking a declaratory judgment as to the policy limits of a Basic Automobile Liability Policy ("Policy") Canal issued to Barker. Canal asserts that the Policy is limited to $100,000, which is the face amount listed on the declaration page of the Policy. Conversely, the Defendants contend that a collective reading of the Policy, particularly its "Out of State Insurance" provision; Virginia's minimum insurance requirements for interstate trucking businesses; and applicable federal regulations places the policy limits at $750,000.

In response to the Complaint, Clymer and Penn filed counterclaims against Canal in which they assert that Canal owes a duty to indemnify Barker and Colvard for at least $750,000 as to claims brought in connection with the accident. In the alternative, Clymer and Penn seek reformation of the insurance contract between Canal and Barker. Specifically, they assert "[t]o the extent the terms of the insurance contract...do not provide for the minimum amounts of insurance or other liability protection required by applicable law in connection with such business, Canal and Barker made a mutual mistake when they entered into an insurance contract that did not provide for such minimum amounts." Amend. Counterclaim ¶15. Accordingly, Penn and Clymer seek reformation of the insurance contract to provide at least the minimum liability protection required by applicable law.

---

[1] Penn alleges that her damages to date exceed $300,000, which includes approximately $200,000 in medical bills. The $300,000 amount does not include any calculation of future medical treatment or for the loss of her eye.

There are two primary issues before the Court: (1) whether the Out of State Insurance provision in the Policy increases the policy limits to $750,000 and (2) whether the contract between Canal and Barker may be reformed to increase the policy limits to $750,000.

## II. DISCUSSION

### A. Standard of Review

"After the pleadings are closed..., any party may move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c). In considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the facts presented in the pleadings and the inferences drawn therefrom must be viewed in the light most favorable to the non-moving party. Edwards v. City of Goldsboro, 178 F.3d 231, 248 (4th Cir. 1999). The purpose of a motion for judgment on the pleadings is to test the sufficiency of the Complaint. Id. at 243.

When considering a Rule 12(c) Motion, the Court accepts as true the facts set forth in the Complaint and the exhibits attached thereto because only the legal sufficiency of the Complaint are tested under a Rule 12(c) or 12(b)(6) motion, not the facts in support of the Complaint. Fed. R. Civ. Pro. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); see also Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir.2000). The Court, however, is not required to accept as true conclusions or inferences from the Complaint which contradict the attached exhibits. See Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), . . . the exhibit prevails."). Dismissal is inappropriate pursuant to Rule 12(c) unless it is clear that the non-moving party can prove no facts sufficient to support the claims for relief. Edwards, 178 F.3d at 244.

**B.     Whether the Out of State Insurance Provision in the Insurance Contract between Barker and Canal Increases the Policy Limits to $750,000**

The parties agree that because the insurance contract between Canal and Barker was created in Georgia, Georgia law controls interpretation of the Policy. See Resource Bankshares v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (finding that contract interpretation is governed by the state where the contract is made). In Georgia, insurance policies are a matter of contract "and the parties to an insurance policy are bound by its plain and unambiguous terms." Cincinnati Ins. Co. v. Magnolia Estates, Inc. 286 Ga.App. 183, 185 (Ga.App. 2007). Thus, where the terms of the policy are unambiguous, Georgia courts will enforce the policy as written. Id. Similarly, if the language of insurance policy is susceptible to more than one interpretation, Georgia law holds that the terms of the policy will be construed against the insurer. Id.

In the instant case, the "Out of State Insurance" provision[2] of the Policy is at issue. On its face, the provision increases the policy limits to the amount required by the law of another "state or province" for non-residents. Thus, if a state requires a non-resident motor carrier to maintain a

---

[2]The "Out of State Insurance" provision states:
If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a non-resident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss.

minimum amount of insurance, then the policy limits increase to the amount specified under that state's law. The parties do not contest the meaning of the provision nor does this Court find the language of the provision ambiguous.

Accordingly, the central inquiry is whether the state law of Virginia[3] or, in the alternative, applicable federal regulations standing alone require non-resident motor carriers, like Barker, to maintain a minimum amount of insurance when traveling on Virginia roads and highways. See, e.g., State Farm Mut. Auto. Ins. Co. v. McNeal, 491 F. Supp.2d 814, 823 (finding that "[b]y replacing coverage in the policy with that required by state law, State Farm has committed itself to protecting its insureds from changed liabilities brought on by the need to conform with various state laws;" thus, the appropriate inquiry is whether the insured became subject to the foreign state's motor vehicle compulsory insurance, financial responsibility or similar law); O'Shei v. Maryland Casualty Co., 1986 WL 1616, *2 (W.D.N.Y. 1986) (finding that the insurance company agreed to an expansion of coverage based on its Out of State Insurance endorsement; and therefore, the central question in the case was whether the insured was required by Ontario law to carry the minimum amount of uninsured motorist coverage prescribed by statute).

> 1. *Whether Virginia state law required Barker, as a nonresident interstate motor carrier, to carry a minimum amount of insurance?*

The Defendants highlight VA Code Ann. § 46.2-2143(B) and (C) as the provisions which mandate interstate motor carriers to maintain insurance equal to that required by federal law, rule or regulation. Section 46.2-2143(B) provides, in relevant part, that "[a]ll motor carriers shall keep

---

[3] The Court examines the state law of Virginia because the accident occurred in Brunswick County, Virginia.

in force at all times insurance . . . in an amount required by this section," and subsection (C) establishes that "minimum insurance for motor carriers operating in interstate commerce shall equal the minimum required by federal law, rule, or regulation." Citing federal regulations 49 C.F.R. §§ 387.7 and 387.9, the Defendants show that the required minimum level of financial responsibility for interstate motor carriers is $750,000.

Conversely, Canal claims that a holistic reading of the Virginia statutory scheme regulating motor carriers demonstrates that Virginia does not require nonresident motor carriers to maintain insurance. Instead, Virginia only regulates motor carriers who are registered in the state of Virginia and who also engage intrastate commerce. Virginia Code § 46.2-2101(2) exempts from Chapter 21 motor carriers of property who transport "property between any point in this Commonwealth and any point outside this Commonwealth or between any points wholly within the limits of any city or town in this Commonwealth." Id. In short, § 46.2-2101(2) prohibits the application of Chapter 21, which includes § 46.2-2143, to nonresident interstate motor carriers and motor carriers who operate strictly on a local level within a city or township.

Canal argues that its interpretation is supported by other sections of the Chapter 21. First, § 46.2-2102 states that "[n]o motor carrier shall operate any motor vehicle for the transportation of property for compensation on any highway in this Commonwealth *on an intrastate basis* except in accordance with the provisions of this chapter." (Emphasis added). Second, the title of § 46.2-2143, "Surety bonds, insurance, letter of credit or securities required prior to *issuance of registration*; amounts," suggests that the provision is meant to apply to vehicles registered within the Commonwealth. Subsection A of § 46.2-2143 supports this reading of § 46.2-2143 because it outlines the prerequisites necessary for a motor carrier to register a vehicle in the State.

7

This Court agrees with Canal. A fundamental canon of statutory construction is to start with the plain language. Discover Bank v. Vaden, 396 F.3d 366, 369 (4th Cir. 2005). "[W]here the statute's language is plain, the sole function of the courts is to enforce it according to its terms." Id. (quoting U.S. ex rel. Wilson v. Graham County Soil & Water Conservation Dist., 367 F.3d 245, 247 (4th Cir.2004)) (internal quotation omitted). Further, courts must "give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous." Id. (quoting United States v. Ryan-Webster, 353 F.3d 353, 366 (4th Cir.2003)) (internal quotation omitted).

A comprehensive reading of the pertinent sections of Chapter 21 supports Canal's interpretation of the § 46.2-2143. Particularly, § 46.2-2101(2), on its face, exempts the application of all the provisions within Chapter 21 including § 46.2-2143, from motor carriers who engage in interstate commerce or who operate strictly on a local basis within a township or city; thereby, limiting its application only to those carriers who operate in intrastate commerce. This is further supported by § 46.2-2143 itself when read as a whole. The thrust of § 46.2-2143 is to outline the requirements a motor carrier must fulfill prior to registering in Virginia. Subsection A lists four different ways a motor carrier may certify to the Department that the vehicle is covered. Although § 46.2-2143(C) initially states that "[t]he minimum insurance for motor carriers operating in interstate commerce shall equal the minimum required by federal law, rule, or regulation," three sentences later within the same section it reads "[a]ny motor carrier that meets the minimum federal financial responsibility requirements and also operates in intrastate commerce may submit, in lieu of a separate filing for its intrastate operation, proof of the minimum federal limits, provided that (i) both interstate and intrastate operations are insured, (ii) the public liability filed is at least

$750,000, and (iii) any cargo insurance requirements of this section have been met."[4] When read as a whole, § 46.2-2143 is clearly outlining financial responsibility requirements for motor carriers who are registered in the state of Virginia. Therefore, when § 46.2-2143 is considered in conjunction with the other provisions in the chapter, specifically the exemption in § 46.2-2101(2), it is evident that nonresident motors carriers, like Barker, who are engaged in interstate commerce and whose vehicles are principally garaged and registered in another state are exempt.

The Defendants attempt to respond to Canal's argument by pointing out that § 46.2-2143 (B) requires "*all motor carriers*" to keep in force "at all times insurance, a bond or bonds" and § 46.2-2141 mandates the application of the Article 2 Insurance Requirements to "*all motor carriers* as defined under this chapter." (Emphasis added). Section 46.2-2100 defines "motor carrier" as "*any person* [including Barker] who undertakes whether directly or by a lease, to transport property, including household goods, as defined by this chapter, for compensation over the highways of the

---

[4]Subsections (B) and (C) of Va. Code Ann. § 46.2-2143 state, in their entirety that:

(B) All motor carriers shall keep in force at all times insurance, a bond or bonds, in an amount required by this section.
(C) The minimum public liability financial responsibility requirements for motor carriers operating in intrastate commerce shall be $750,000. The minimum insurance for motor carriers operating in interstate commerce shall equal the minimum required by federal law, rule, or regulation. The minimum cargo insurance required for motor carriers operating in intrastate commerce shall be $50,000. Motor carriers engaged exclusively in the transportation of bulk commodities shall not be required to file any cargo insurance, bond or bonds for cargo liability. Any motor carrier that meets the minimum federal financial responsibility requirements and also operates in intrastate commerce may submit, in lieu of a separate filing for its intrastate operation, proof of the minimum federal limits, provided that (i) both interstate and intrastate operations are insured, (ii) the public liability filed is at least $750,000, and (iii) any cargo insurance requirements of this section have been met.

Commonwealth." Nonetheless, despite the broad definition of the term motor carrier, the Defendants can not circumvent the fact that § 46.2-2101(2) exempts from the entire chapter "transportation of property between any point in this Commonwealth and any point outside this Commonwealth." To apply the law as the Defendants argue would render § 46.2-2101(2) meaningless. Thus, this Court concludes that Virginia does not require interstate motor carriers who are registered in another state to maintain a minimum amount of insurance.

> 2. *Whether the federal financial responsibility regulations standing alone require Barker to maintain $750,000 in insurance?*

Federal regulations, specifically 49 C.F.R. §§ 387.7 and 387.9, clearly require motor carriers to obtain and have in effect a minimum level of financial responsibility in the amount of $750,000. The requirement applies to "for-hire motor carriers operating motor vehicles transporting property in interstate or foreign commerce." 49 C.F.R. § 387.3. As Colvard, using Barker's vehicle, had delivered property to Petersburg and was in the process of picking up cargo to deliver it from North Carolina to Georgia, Barker clearly falls within the purview of § 387.3; and is, therefore, required to maintain a minimum level of financial responsibility in the amount of $750,000. The Defendants contend that because the federal regulations require Barker to maintain a financial responsibility of $750,000, this is sufficient to trigger the Out of State Insurance provision. This Court is not persuaded.

Although Barker was required to show a financial responsibility of $750,000, Barker may satisfy his responsibility through several means, one of which includes insurance. In other words, while Barker may opt to meet his proof of financial responsibility by purchasing insurance, the federal regulations do not require Barker to do so. Additionally, even if federal regulations required

Barker to carry insurance, which they do not, the Out of State Insurance provision would not be triggered by federal law standing alone.

As a general principle, this Court recognizes that federal financial responsibility provisions regulate motor carriers and not insurers. "[T]he purpose of the financial responsibility provisions of the Motor Carrier Act of 1980 is ... to assure the general public that a motor carrier maintains an adequate level of financial responsibility sufficient to satisfy claims covering public liability." McGirt v. Gulf Ins. Co., 207 Fed. Appx. 305, 308 (citations omitted). It is the motor carrier's responsibility to ensure that it has complied with the financial responsibility regulations, not the insurer. Illinois Central R. Co. v. Dupont, 326 F.3d 665, 668-69 (5th Cir. 2003) (concluding that the regulations requiring proof of minimum levels of responsibility were directed at, and the responsibility of, the motor carrier and, therefore, rejecting the plaintiff's argument that because the regulations required the motor carrier to have the MCS-90 endorsement, the insurance policy should be read to automatically include the endorsement); Brewer v. Maynard, 2007 WL 2119250, *1, *2 (S.D.W.Va. 2007) (holding that the motor carrier regulations place the burden of compliance on the motor carrier not the insurer where the plaintiff was attempting to make a claim for "negligent under insurance").

49 C.F.R. § 387.7(d) permits a motor carrier to meet its financial responsibility in one of three ways: (1) obtaining liability insurance, including an MCS-90 endorsement; (2) obtaining a surety bond; or (3) obtaining written authorization from the Federal Motor Carrier Safety Administration to self-insure. When a motor carrier opts not to use an insurance policy to meet its financial responsibility requirements, then the regulations do not require the carrier to maintain a minimum of $750,000 in insurance. See Bray v. Insurance Co. of State of Pennsylvania, 917 F.2d

130, 132 (4th Cir.1990) (explaining that a trucking company is not required to carry insurance because it "may satisfy proof of financial responsibility by electing to be self-insured and filing an approved surety bond or other security...[but] [i]f the trucker does not elect to be self-insured, it must carry insurance").

In the present case, the face amount of the Policy is $100,000. Further, the Policy does not contain a MCS-90 endorsement. Thus, it is evident that this Policy was not being used to satisfy Barker's proof of financial responsibility requirement in the amount of $750,000. As such, the federal regulations requiring a minimum financial responsibility level of $750,000 do not apply to the Policy issued by Canal.

Even if the federal regulations *arguendo* did require Barker to maintain $750,000 in insurance, the Out of State Insurance contract provision is not triggered by federal law standing alone. As the parties have agreed, Georgia law governs the interpretation of the insurance contract. As discussed previously, where the terms of the policy are unambiguous, Georgia courts will enforce the policy as written. Cincinnati Ins. Co. v. Magnolia Estates, Inc. 286 Ga.App. 183, 185 (Ga.App. 2007). If, however, the language of the insurance policy is ambiguous or susceptible to more than one reasonable interpretation, Georgia law holds that the terms of the policy will be construed against the insurer. Id.

In the case at bar, the Out of State Insurance provision is not ambiguous. It clearly states that if the laws of "any state or province" requires "a non-resident...to maintain insurance with respect to use of a motor vehicle in such state or province," then the policy limits will increase. From the title of the provision to its stated terms, the provision is aimed at protecting insureds from increased insurance requirements imposed by state law on nonresidents, not federal law. If the Out of State

Insurance provision is read to increase the policy provision to $750,000 based strictly on the application of federal law, then the Policy would be worth $750,000 everywhere in the United States and the $100,000 face amount would serve no purpose.

Accordingly, this Court finds that the applicable policy limits are $100,000 because (1) federal regulations do not require Barker to maintain $750,000 in insurance and (2) even if they did, the Out of State Insurance provision in the Policy is not triggered strictly by the application of federal law. Because this Court finds that neither Virginia nor applicable federal law requires Barker to maintain insurance in the amount of $750,000, Penn's and Clymer's Counterclaims asserting that Canal has a duty to indemnify Barker in the amount of $750,000 also necessarily fails. Thus, the only remaining issue with respect to the Counterclaims is whether the insurance contract between Canal and Barker may be reformed.

### C. Whether the Contract between Canal and Barker may be Reformed to Increase the Policy Limits to $750,000.

In their Counterclaims, Penn and Clymer seek reformation of the insurance contract between Barker and Canal on the grounds of mutual mistake. Penn and Clymer assert that the insurance contract should be reformed to reflect the minimum amounts of insurance or other liability protection required by applicable law. Canal counters that the Counterclaims filed by Penn and Clymer fail as a matter of law because (1) Penn and Clymer lack standing to seek reformation and (2) there was no mistake of law or fact. Relying on Googe v. Florida Intern. Indem. Co., 262 Ga. 546 (Ga. 1992) and Richards v. State Farm Mut. Auto. Ins. Co., 252 Ga.App. 45 (Ga. App. 2001), Penn and Clymer argue that the Supreme Court of Georgia has recognized that where liability insurance coverage is legislatively mandated, then a third party beneficiary, i.e. victims of

13

automobile accidents, may be permitted to bring an action for equitable reformation. Richards, 252 Ga.App. at 46 (citing Googe, 262 Ga. 546, 548(1)).

This Court, however, finds that it does not need to determine whether Georgia confers third party beneficiary status to victims of automobile accidents. Instead, the rules promulgated by the Georgia Public Service Commission ("PSC"), as authorized by O.C.G.A. §§ 46-7-12 and 46-7-12.1, show that motor carriers who elect to obtain insurance or a bond, as opposed to obtaining permission from the Georgia Public Service Commission to self-insure, must maintain a minimum bond or insurance in the amount of $100,000. PSC § 7-2.1.

The Policy at issue here complies with the minimum amounts under Georgia law.[5] Thus, even if Penn and Clymer were permitted to reform the contract to comply with applicable law, the limits of the Policy would still be $100,000. As such, Penn's and Clymer's Counterclaims fail as a matter of law.

### III.  CONCLUSION

For the reasons stated above, Canal's Motion for Judgment on the Pleadings is hereby GRANTED. An appropriate Final Order shall issue.

/s/
James R. Spencer
Chief United States District Judge

Entered this   14th   day of November 2007

---

[5]Because this Court has previously decided that federal regulations do not require Barker to maintain insurance, there is no need to re-examine that issue here.